## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIFFANY LEWIS, ) | |
| 75 Delphinium Way ) | |
| Stafford, VA 22556 ) | Civil Action No. _____ |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| *v.* ) | |
| ) | Jury Trial Demand |
| DENIS R. MCDONOUGH, ) | |
| in his official capacity as ) | |
| SECRETARY OF THE DEPARTMENT ) | |
| OF VETERANS AFFAIRS OF THE ) | |
| UNITED STATES, ) | |
| 810 Vermont Avenue, NW ) | |
| Washington, D.C. 20420, ) | |
| ) | |
| *Defendant*. ) | |

## COMPLAINT FOR RELIEF
## FROM EMPLOYMENT DISCRIMINATION IN VIOLATION OF TITLE VII

Tiffany Lewis, a Black woman, files this employment discrimination suit against her

employer, the U.S. Department of Veterans Affairs ("Agency"). In this action, Plaintiff alleges

that she was denied promotion because of her race and/or gender when her former supervisor,

Barry Brinker, falsified her score, refused to interview her, and then selected a less qualified

White male for a vacant position for which she was qualified and applied in August 2018.

### NATURE OF CLAIM

1.      Plaintiff Tiffany Lewis ("Plaintiff") brings this civil action against Denis R.

McDonough, in his official capacity as Secretary of the Department of Veterans Affairs of the

United States ("Agency" or "Defendant"), under Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e *et seq*., as amended.

2.      Plaintiff alleges that Defendant did not select her for a Supervisory Management & Program Analyst position to which she had applied and for which she was qualified on the bases of her race (Black or African American) and sex (female), and instead selected a less qualified White male.

3.      As relief, Plaintiff seeks retroactive promotion, back pay, damages, her attorney fees, and all other relief to which she may be entitled.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. § 2000e-16(c).

5.      Venue lies in this Court because Defendant employed Plaintiff in the District of Columbia, all the discriminatory actions and decisions took place in the District of Columbia, and the records concerning Plaintiff's employment are maintained in the District of Columbia. 42 U.S.C. § 2000e-5(f)(3).

## DESCRIPTION OF THE PARTIES

6.      Plaintiff, a Black woman, is a citizen of the United States and a resident of the Commonwealth of Virginia. Plaintiff began her employment with Defendant in August 2014 and is currently employed by Defendant as a Management and Program Analyst, GS-14, in the Office of Logistics and Supply Chain Management Services, Department of Veterans Affairs.

7.      Defendant Denis R. McDonough, the Secretary of the Department of Veterans Affairs, has his office in the District of Columbia. He is sued only in his official capacity as the head of his Agency, as required by Title VII. 42 U.S.C. § 2000e-16(c).

2

### STATEMENT OF FACTS

8. Plaintiff is a Black woman. Since August 2014, Plaintiff has been employed by Defendant as a Management and Program Analyst at the Agency's Office of Acquisition and Logistics.

9. Barry Brinker (White male) was Plaintiff's direct supervisor from approximately September 20, 2016, until September 7, 2018.

10. Mr. Brinker was Plaintiff's second-line supervisor from approximately September 8, 2018, until April 8, 2019.

11. On July 2, 2018, the Defendant posted a vacancy announcement for a Supervisory Management & Program Analyst, GS-15, position ("Supervisory position").

12. Mr. Brinker was the Hiring Manager (also known as the "selecting official") for the Supervisory position.

13. Plaintiff applied for the Supervisory position on or about July 2, 2018.

14. On July 15, 2018, Mr. Brinker received a "Certificate of Eligibles" who met the minimum qualifications for the Supervisory position. The Certificate included Plaintiff.

15. In July 2018, Mr. Brinker convened a panel of two Agency employees, William Eytel and Bob Wilson (the "screening panel"), to screen the applicants on the Certificate of Eligibles for the Supervisory position by scoring their resumes.

16. On July 25, 2018, Mr. Eytel, one of the screening panelists, provided a copy of his score sheet to Mr. Brinker. Mr. Eytel had used Microsoft Excel to complete his scoresheet for the applicants.

17. Mr. Eytel scored Plaintiff 24/25, higher than any other candidate that he ranked.

18. Bob Wilson, the other screening panelist, scored Plaintiff 21/25.

19. Mr. Brinker stated that he wanted to interview only the applicants who scored the first and second highest based on their screening panel scores.

20. Plaintiff's combined score from Mr. Eytel and Mr. Wilson, a total of 45, was the second highest among the applicants for the Supervisory position.

21. Although she was the second-highest applicant, Mr. Brinker did not interview Plaintiff for the Supervisory position.

22. On July 30, 2018, Mr. Brinker submitted what he described as Mr. Eytel's and Mr. Wilson's scoresheets to Yulonda Thorpe and Paul Wood, both of whom are employees in the Agency's Human Resources Liaison Office.

23. In fact, Mr. Brinker had altered Mr. Eytel's scoresheet, lowering the score Mr. Eytel provided Plaintiff on one category from a 5 (the highest score in that category) to a 4, resulting in a change of Plaintiff's total score from 24 to a 23.

24. While Plaintiff's original score was second highest, and warranted an interview as the result, based on his alteration of Plaintiff's score, the only applicants Mr. Brinker interviewed for the Supervisory position were two men.

25. Mr. Brinker selected Ernest Reed (White male) for the Supervisory position.

26. On or about August 15, 2018, Mr. Brinker announced during a staff meeting that Mr. Reed had been selected for the Supervisory position. At the time Mr. Brinker made this announcement, Plaintiff had no way of knowing, and she did not know, that Mr. Brinker had lowered her panel score, thus disqualifying her from being interviewed for the position.

27. On or about September 7, 2018, Mr. Reed became Plaintiff's direct supervisor.

28. On November 29, 2018, Brian O'Connor, an Agency employee, filed a complaint with the Agency's Office of Accountability and Whistleblower Protection office (hereinafter "O'Connor's whistleblower complaint"). In relevant part, Mr. O'Connor reported that Mr. Brinker had engaged in a prohibited personnel practice during the selection process for the Supervisory position for which Plaintiff applied. Mr. O'Connor's complaint included the following statement:

> I discovered that a hiring manager appeared to have engaged in a prohibited personnel practice by changing a score on a score sheet after it was submitted to him by a panelist on a records panel he convened for the purpose of racking-and-stacking applicants for possible interview for a position with his office. He changed the score without permission of the panelist. As a result of his manipulation of scores, it changed the ranking of individuals such that one highly qualified applicant (black, female) fell below the cut-off line he set for who he would interview. He ended up interviewing just 2 people, which included the person he ultimately selected.

29. Mr. O'Connor did not inform Plaintiff that he had filed a whistleblower complaint regarding the selection process for the position for which she had applied.

30. On December 19, 2018, Mr. Brinker and Mr. Reed denied Plaintiff's request to participate in the President's Management Council Interagency Rotation Program, which Plaintiff sought as an opportunity to advance her career.

31. During the period August through December 2018, Mr. Brinker and/or Mr. Reed denied Plaintiff training opportunities she sought to advance her career.

32. On or about December 26, 2018, Plaintiff met with Mr. Brinker's direct supervisor, Thomas Burgess, to discuss Mr. Brinker's and Mr. Reed's denial of request to participate in the President's Management Council Interagency Rotation Program and her previous requests for training opportunities to enhance her competitiveness for promotion.

33. During Plaintiff's December 26, 2018, meeting with Mr. Burgess, Plaintiff explained that Mr. Brinker had previously denied several of Plaintiff's requests for training and development opportunities, and that Mr. Reed had been hostile towards her since his onboarding. In response to Plaintiff, Mr. Burgess rhetorically asked whether Mr. Brinker and Mr. Reed "thought we were living in the 1950's or something." Plaintiff interpreted Mr. Burgess's comment to mean that Mr. Brinker and Mr. Reed were metaphorically living in the Jim Crow era (i.e., systemically discriminating against Black people in the United States).

34. During the December 26, 2018 meeting, Mr. Burgess also asked Plaintiff whether she had applied for the Supervisory position. Plaintiff then explained that she had applied, but was not interviewed or selected. Mr. Burgess did not explain to Plaintiff why he asked about the Supervisory position.

35. On January 23, 2019, within 45 days of the denial of Rotation assignment she had sought, Plaintiff initiated EEO counseling with the Agency's Office of Resolution Management. Plaintiff explained to the EEO Counselor that she believed management's behavior constituted a hostile work environment based on their denial of her training requests. Because of her conversation with Mr. Burgess, Plaintiff also raised her non-selection as part of her hostile work environment claim.

36. On February 15, 2019, the Agency's EEO office notified Mr. Brinker that Plaintiff filed an informal EEO complaint and named him and Mr. Reed as Responsible Management Officials.

37. On February 22, 2019, the Agency issued Plaintiff a Notice of Right to File a formal complaint of discrimination, because the informal complaint process had failed to reach a resolution.

38. On March 8, 2019, Plaintiff filed a formal EEO complaint alleging a hostile work environment on the basis of her race and sex. Plaintiff also cited her non-selection for the Supervisory position as a discriminatory act in her hostile work environment claim.

39. After filing her formal complaint of discrimination, Plaintiff received the EEO counselor's written report on or about March 15, 2019.

40. The EEO counselor's report explained that "[d]ocumentation was submitted regarding selections for positions. It was noted that the score sheets submitted by BB [Barry Brinker] appeared to be altered to lower AP's [Aggrieved Party's] score, which kept her from being interviewed."

41. Plaintiff's receipt of the counselor's written report was the first she learned that Mr. Brinker intentionally lowered her screening score to disqualify her during the selection process.

42. On April 8, 2019, Mr. Brinker resigned from his position as Director of Logistics Policy and Supply Chain Management Services at the U.S. Department of Veterans Affairs.

43. On April 9, 2019, the Agency dismissed Plaintiff's non-selection claim as an "independently actionable claim of disparate treatment . . . for failing to comply with the regulatory time limits."

44. On June 7, 2019, Theresa Lieb, the Agency's EEO investigator, contacted Mr. Brinker at his personal email address and notified him that Plaintiff identified him as a Responsible Management Official in her EEO complaint. The EEO investigator offered Mr. Brinker

an opportunity to respond to Plaintiff's allegations by submitting an affidavit under penalty of perjury. Mr. Brinker never responded to the EEO investigator's email. Moreover, as the sole selecting official, Mr. Brinker never articulated any legitimate non-discriminatory reason why he did not interview Plaintiff when she was rated second highest by the scoring panelists and why he intentionally lowered Plaintiff's score.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

45. On January 23, 2019, Plaintiff initiated EEO counseling with Defendant's Office of Resolution Management ("ORM") as required by 29 C.F.R. § 1614.105. Plaintiff timely initiated counseling on the 36th day after being denied the rotational assignment. *Id.*

46. On February 22, 2019, Defendant issued Plaintiff a Notice of Right to File a Discrimination Complaint.

47. On March 8, 2019, Plaintiff timely filed her formal complaint of discrimination against Defendant alleging a hostile work environment based on her race and sex (Agency Case No. 20DR-01AL-2019101597).

48. On April 9, 2019, Defendant dismissed Plaintiff's non-selection claim as an independently actionable claim of disparate treatment.

49. On January 16, 2020, pursuant to C.F.R. § 1614.110(b), the Defendant issued its Final Agency Decision ("FAD") Plaintiff's complaint. The FAD found that the Agency had not discriminated against Plaintiff when she was not selected for the Supervisory Management & Program Analyst position.

50. On February 14, 2020, Plaintiff timely filed her Notice of Appeal of the Agency's FAD to the U.S. Equal Employment Opportunity Commission's ("EEOC") Office of Federal Operations ("OFO").

51. On July 29, 2021, the OFO issued, and Plaintiff received, a decision finding that Plaintiff had not established her claim of discriminatory harassment. The OFO did not rule on Plaintiff's argument that the Agency had improperly dismissed her non-selection claim on timeliness grounds.

52. Plaintiff has timely filed this action within 90 days of her receipt of the OFO's Decision. 42 U.S.C. § 2000e-16(c).

**STATEMENT OF CLAIMS**

**COUNT I**
**DISCRIMINATION BASED ON RACE AND SEX: NON-SELECTION**
**IN VIOLATION OF TITLE VII**

53. Plaintiff realleges and incorporates paragraphs 6-52 of this Complaint.

54. Defendant discriminated against Plaintiff when it did not select her for the Supervisory Management & Program Analyst position.

55. Mr. Brinker's actions denied Plaintiff an equal opportunity to compete for the Supervisory Management & Program Analyst position and constitutes discrimination on the basis of her status as a Black woman.

56. Defendant became aware of Mr. Brinker's actions regarding Plaintiff's score when Mr. O'Connor filed his whistleblower complaint. Nevertheless, Defendant took no steps to rectify these actions and instead baselessly argued that *Plaintiff's* raising them was untimely.

57. As a result of Mr. Brinker's conduct, Plaintiff suffered damages including, but not limited to, pain and suffering, emotional distress, humiliation, loss of pay, and attorney's fees.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial of all claims triable to the jury.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff prays that this honorable Court enter a judgment which:

A. Declares that Defendant discriminated against Plaintiff in violation of Title VII of the Civil Rights Act;

B. Enjoins Defendant from future acts of discrimination;

C. Orders Defendant to take such measure as are reasonable and necessary to ensure that discriminatory employment practices such as those described herein are eliminated and do no reoccur;

D. Awards Plaintiff compensatory damages for the injuries she has suffered in an amount appropriate to the proof at trial;

E. Awards Plaintiff reasonable attorneys' fees and costs; and

F. Awards Plaintiff all other legal and equitable relief to which she may be entitled.

**V**ERIFICATION

Under penalty of perjury, I swear/confirm that the statements of fact above are true and correct to the best of my knowledge and belief.

Date:  October 25, 2021

Tiffany Lewis

Respectfully submitted, this 25th day of October, 2021.

/s/ *George Chuzi*

**George M. Chuzi**
D.C. Bar No. 336503
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Avenue, NW, Suite 1000
Washington, DC 20006
Tel: 202-331-9260
Fax: 1-866-455-1504
gchuzi@kcnlaw.com

*Attorney for Plaintiff*

11